# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPLANT DIRECT SYBRON INTERNATIONAL, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ZEST IP HOLDINGS, LLC, a Delaware limited liability company; ZEST ANCHORS, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-CV-2247-LAB-WVG<br><br>**ORDER GRANTING ZEST'S MOTION TO DISMISS WITHOUT PREJUDICE** |

On March 12, 2010, Zest sued Implant Direct for patent infringement. That case is ongoing. Most recently, the Court held a *Markman* hearing and issued a subsequent order construing the patent claims at issue. On September 27, 2011, Implant Direct took the offensive, separately suing Zest on an assortment of claims: unfair competition, false advertising, trademark infringement, and trade libel. The crux of Implant Direct's lawsuit is that Zest's advertisements for its own product: (1) misrepresent the nature of its patent infringement lawsuit against Implant Direct; (2) misrepresent the capabilities of Implant Direct's product; and (3) contain unauthorized depictions of Implant Direct's product. Now pending is Zest's motion to dismiss Implant Direct's complaint.

//

- 1 -

## I.      Legal Standard

A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To defeat such a motion, a complaint's factual allegations needn't be detailed; they must simply be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "some threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While the Court must draw all reasonable inferences in Implant Direct's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, the Court does not need to accept any legal conclusions as true. *Iqbal*, 556 U.S. at 678. A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). Nor does it suffice if it contains a merely formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

## II.     Lanham Act False Advertising Claim

ID's first claim against Zest alleges unfair competition and false or misleading descriptions of fact under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).[1] This is, basically, a false advertising claim. ID must show that: (1) Zest made a false or misleading statement

---

[1] ID accuses Zest of obfuscation by construing its Lanham Act claim as a false designation of origin claim under § 1125(a)(1)(A). (Opp'n Br. at 2.) This isn't quite fair. Zest is clear in its motion to dismiss that it understands ID to be alleging a Lanham Act claim under §§ 1125(a)(1)(A) *and* 1125(a)(1)(B), and it addresses both thoroughly. ID now says false designation of origin isn't pled, but that's not true. Its complaint both alludes to the claim and explicitly mentions it. (*See* Compl. ¶¶ 31, 34, and 35.)

of fact in commercial advertising about ID's product; (2) the statement actually deceived or is likely to deceive a substantial segment of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) Zest caused the statement to enter interstate commerce; and (5) the statement resulted in actual or probable injury to ID. *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1348 (Fed. Cir. 1999).

Starting with the first element, what is Zest's false or misleading statement? According to ID, "Defendants have sued and made false representations of patent infringement against Implant Direct for its GPS product while advertising that the GPS product does not contain the patented features of the Locator product in commercial periodicals." (Compl. ¶ 30.) ID doesn't identify any specific statements[2], but it must have in mind the following language from a Zest LOCATOR advertisement that it attaches to its complaint:

**GPS ABUTMENTS & COMPONENTS**

> Beware of other "look-alike" products—they do **NOT** have the unique innovations provided by the Zest patented product. The "look-alike" products do not have the Zest pivoting technology and in fact, are designed not to pivot, which is a key performance feature of the LOCATOR System.

(Compl. Ex. 1.) ID's position, apparently, is that it's misleading of Zest to accuse ID of patent infringement and then claim its product is distinguishable from ID's product. If that's the case, ID insinuates—if ID's product lacks "the unique innovations provided by the Zest patented product"—then Zest shouldn't be suing ID for patent infringement in the first place.

There are at least two problems with this. First, the advertisement at issue says nothing about Zest's patent infringement lawsuit against ID (or the patents themselves, for that matter), and ID doesn't claim that there's something independently false or misleading about Zest's statement that ID's GPS product lacks the innovations of Zest's LOCATOR product. Second, as the Court's recent *Markman* order in the patent infringement case

---

[2] This is both odd and inexcusable. If ID is serious about alleging a Lanham Act violation, it has to do more than staple some Zest advertisements to its complaint and claim they are "deceptive and misleading," "factually inaccurate," and "exaggerations." (Compl. ¶¶ 19, 30, 32.) Both the Court and Zest are entitled to know what exactly about the advertisements is deceptive, inaccurate, or exaggerated.

made clear, patent infringement turns on the claims of a patent, not on the structure or functioning of a product that embodies the claims. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) ("Infringement . . . is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit."). Thus, it's not inherently inconsistent of Zest to claim that ID has infringed its patents *and* that ID's GPS product doesn't contain all of the innovations of Zest's LOCATOR product.

There is another statement by Zest upon which ID may also be basing its false advertising claim:

> IMPORTANT NOTICE
>
> *Dear valued customers of the ZEST LOCATOR Attachment System who currently purchase from Attachments International and Sybron Dental Specialties affiliated businesses.*
>
> Please note that due to pending legal action, we are terminating our distribution agreement with Attachments International and Sybron Dental Specialties affiliated businesses effective May 4, 2011.
>
> From that day forward, please contact ZEST Anchors directly at 1.800.262.2310 for your LOCATOR Attachment System needs.

(Compl. Ex. 1.[3]) What's false or misleading here? According to ID:

> The false advertisements blame Implant Direct for the termination of their distribution agreements due to legal action on the part of Implant Direct. This statement is false, in that Implant Direct did not cause Defendants to terminate their distribution agreement with Implant Direct and Defendants were not required to terminate due to any patent infringement legal action.

(Compl. ¶ 20.) This makes little sense to the Court. The advertisement says nothing about the particulars of the "pending legal action." It just alludes to it vaguely. The reader doesn't know who sued who, or what the nature of the lawsuit is. The advertisement doesn't even mention "Implant Direct" as such, and it certainly doesn't "blame" Implant Direct for the

---

[3] ID excerpts this statement in the "Defendants' Wrongful Acts" section of its complaint, but it doesn't refer to it specifically in its Lanham Act claim.

- 4 -

termination of the distribution agreement. Nor does it say Zest was *required* to terminate the distribution agreement.[4]

ID's opposition brief is perplexing. Rather than respond directly to Zest's arguments that its false advertising claim is conclusory and incomplete, it begins by taking on Zest's invocation of the "nominative fair use defense." But Zest's invocation of this defense is both narrow and non-essential to its attack on ID's Lanham Act claim. In a single paragraph in its motion to dismiss, Zest invokes the defense merely to point out that customers won't be confused by its advertisements' use of "Implant Direct" and "GPS" because it uses them for *identification* purposes. (Mot. at 6.) That is to say, the advertisements at issue mention "Implant Direct" and "GPS" merely to identify a product that Zest believes is inferior to its own—*not* to associate the two products in a misleading way. This has virtually nothing to do with ID's false advertising claim.

When ID's opposition brief does address Zest's substantive arguments, it comes up short. Regardless of whether the heightened pleading standard for fraud applies to false

---

[4] ID's complaint is imprecise on this point. Initially, it seems to suggest that Zest wasn't required to terminate the distribution agreement but represented that it was:

> The false advertisements blame Implant Direct for the termination of their distribution agreement due to legal action on the part of Implant Direct. This statement is false, in that Implant Direct did not cause Defendants to terminate their distribution agreement with Implant Direct and Defendants were not required to terminate due to any patent infringement legal action.

(Compl. ¶ 20.) Later, however, ID suggests that Zest was legally required to terminate the distribution agreement:

> Defendants' acts alleged herein, including, but not limited to, their uses of the depiction of the Implant Direct GPS logo with Infringing Advertisements that contain statements that blame Implant Direct for the termination of their distribution agreement, when they were legally required to terminate their distribution agreement with Implant Direct constitutes false advertising . . . .

(Compl. ¶ 39.)

- 5 -

advertising claims under the Lanham Act[5], ID does little more than append four advertisements to its complaint and then, with no reference to their particulars and no explanation, allege that they contain false and misleading statements that are likely to deceive consumers. ID doesn't explain what is false about Zest's advertisement explaining that it is terminating its distribution agreement with Sybron Dental Specialties due to pending legal action.[6] Nor does ID explain what is false or misleading about Zest's advertisement warning consumers that Implant Direct's GPS product lacks the "unique innovations" of the Zest LOCATOR product. Finally, ID attaches to its complaint two advertisements that place the Zest LOCATOR and Implant Direct GPS products side-by-side and compare their features, but ID says nothing about the truth of the comparisons.

The only clarification ID's opposition offers is that its false advertising claim is a so-called "exclusive source" claim: Zest exaggerates the scope of its patent and in so doing creates the false impression that it can't be designed around. *See Zenith Electronics*, 182 F.3d at 1344 (recognizing that a patentee's allegedly false representation that it is the exclusive source of a certain type of product because of its patent is . . . actionable [under the Lanham Act]"); *Mitsubishi Elec. Corp. v. IMS Tech., Inc.*, 1997 WL 630187 at *8 (N.D. Ill. Sept. 30, 1997) ("For example, a seller who exaggerates the scope and validity of his patent, thus creating the false impressions that the seller is the exclusive source of the product, may overstep the boundaries set in the Lanham Act.") But here again, ID's allegations are completely conclusory. It offers no explanation as to how Zest's advertisements exaggerate the scope of its patent and falsely suggest that it is the exclusive

---

[5] There is conflicting caselaw on this question, and the parties cite only what is advantageous to them. *See EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F.Supp.2d 1074, 1085 (C.D. Cal. 2010) ("Although the Ninth Circuit has not concluded that Rule 9(b) applies to Lanham Act claims, many district courts have applied this heightened pleading standard to claims that are grounded in fraud, such as misrepresentation claims."); *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329 at *8–9 (N.D. Cal. 2007) (finding "no persuasive authority for the[ ] claim that this cause of action is subject to a heightened pleading standard").

[6] Did it *not* terminate its distribution agreement? Is there *no* pending legal action? If it did terminate its distribution agreement and there is legal action, do the two have nothing to do with one another? And how is this likely to influence purchasing decisions of Implant Direct's product?

- 6 -

source of a certain kind of product. It offers no facts to even suggest that explanation. It offers, instead, four exhibits and some bare allegations.

For all of the above reasons, ID's Lanham Act claim for unfair competition is **DISMISSED**.

### III.     California False Advertising Claim

ID's next claim alleges false advertising under California's Business and Professions Code, § 17500. The factual bases for this claim are more or less identical to those for its Lanham Act claim, and ID even defends them jointly in its opposition brief. (*See* Opp'n Br. at 10–14.) The claims must stand or fall together, and this claim is therefore **DISMISSED**. *See Denbicare U.S.A. Inc. v. Toys R Us, Inc.*, 84 F.3d 1143, 1153 (9th Cir. 1996) (finding that § 17500 claim was properly dismissed when Lanham Act unfair competition claim was properly dismissed).

### IV.     California Unfair Competition Claim

ID's third claim alleges unfair competition under California Business and Professions Code § 17200. Zest again argues that the failure of ID's Lanham Act claim dooms this one, but that assumes a Lanham Act claim that's asserted under § 1125(a)(1)(A). (Mot. at 12.) ID's Lanham Act claim, however, was asserted under § 1125(a)(1)(B), as the Court explained above. Its § 17200 claim therefore deserves a fresher treatment.

The claim centers around Zest's incorporation of ID's trademarks in the advertisements at issue, and sounds very much like a trademark infringement claim:

> Defendants, with full knowledge of the popularity of the Implant Direct Properties, manufactures, markets, distributes and sells its Locator product with commercial advertisements bearing the GPS Trademark and thereby trades on the good will associated with the Implant Direct products and Marks, and misleads the consuming public about its own products and Implant Direct's products.
>
> Implant Direct states, upon information and belief and thereupon alleges, that Defendants' wrongful acts have or will cause confusion with Implant Direct's products and GPS Mark, and has or will cause injury to Implant Direct's business reputation, and thereby constitutes unfair competition laws [sic] of the State of California . . . .

//

1 (Compl. ¶¶ 45–46.) The problem for ID is that these allegations are plainly incongruent with
2 the advertisements it seizes upon.

3       It's true that those advertisements bear the GPS trademark, but they do so only to
4 identify ID's product and distinguish it from its own LOCATOR product. Moreover, the GPS
5 trademark is always marked with a "TM" in superscript and attributed to Implant Direct at the
6 bottom of the advertisement. One advertisement, which warns customers that ID's GPS
7 product lacks the innovations of the LOCATOR, notes at the bottom that "GPS$^{TM}$ is a
8 trademark of Implant Direct Sybron Int'l LLC." Another advertisement, which depicts the
9 LOCATOR and GPS products side-by-side to evaluate their features, notes at the bottom
10 that "GPS$^{TM}$ is a trademark of Implant Direct Sybron Int'l LLC. There is no affiliation between
11 ZEST Anchors, LLC and Implant Direct Sybron Int'l, LLC." It can't possibly be said that, in
12 light of this, Zest is trading on "the good will associated with the Implant Direct products" or
13 that there is a likelihood of the products being confused. To the contrary, its advertisements
14 incorporate the trademarks only to differentiate and disassociate the two products in
15 consumers' minds, and to urge customers to buy Zest's over ID's. Do the ads mislead the
16 public about the relative merits of the LOCATOR and GPS products? The Court has already
17 answered that question above: ID makes no attempt to explain how they do. For example,
18 the advertisement with the LOCATOR and GPS side-by-side claims the GPS: (1) cannot
19 pivot; (2) isn't resilient; (3) has no inside retention; (4) has a food trap with no flush hole; and
20 (5) "Increases Vertical Height and the Potential for a Buccal or Lingual Protrusion in the
21 Denture," whatever that means. ID doesn't allege that any of those statements, in particular,
22 are false or misleading.[7] The claim is **DISMISSED**. (And to be clear, if ID had alleged a

---

[7] In the Court's recent *Markman* order, it suggested that the difference between the LOCATOR and GPS products is not that the former pivots while the latter doesn't, but rather the point of pivoting in the attachment system. In the LOCATOR, the metal cap that is recessed in the dental appliance pivots over retention member that it houses. In the GPS, by contrast, the retention member pivots with respect to the abutment into which it snaps. This, anyway, was the Court's impression during the *Markman* hearing. The point here is simply that ID *could* say it's untrue that its product can't pivot and that Zest's advertisement is therefore misleading, but it doesn't go to the trouble.

false designation of origin or trademark infringement claim under the Lanham Act, *see* 15 U.S.C. § 1125(a)(1)(A), the Court would dismiss the claim for the reasons just given.)

## V.     Common Law Trademark Infringement and Unfair Competition Claim

This claim fails for the same reasons that ID's above claims fail. It is based upon equivalent facts and must satisfy equivalent elements, and it is therefore **DISMISSED**. The cases Zest cites for this reasoning are on point. *See Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) ("Japan Telecom's California unfair competition claim fails because its related Lanham Act claims fail."); *Glow Indus., Inc. v. Lopez*, 252 F.Supp.2d 962, 975 n.90 ("Additionally, the elements of state claims for trademark infringement and unfair competition are substantially similar to those of the comparable federal claims.").

## VI.    Trade Libel Claim

ID's final substantive claim is for trade libel and product disparagement. The trade libel claim requires: (1) a false publication; (2) which encourages others not to deal with the plaintiff; and (3) special damages. *Aetna Cas. & Surety Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988). The product disparagement claim requires slightly more: (1) a publication; (2) of a false and disparaging statement of fact about the product of plaintiff; (3) made with either knowledge of falsity or with reckless disregard of its truth or falsity; (4) with intent to harm's plaintiff's interest; and (5) specific damages. *California Scents v. Surco Products, Inc.*, 406 F.3d 1102, 1109 (9th Cir. 2005) (citing 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:99 (4th ed. 2004)).

ID identifies three statements that it believes are false and give rise to a trade libel and product disparagement claim. The first is Zest's advertisement notifying customers that "due to pending legal action" it would be terminating its distribution agreement with Sybron Dental Specialties. ID doesn't explain why this is false—and as the Court noted above, ID is actually inconsistent on the issue. Is it ID's position that Zest was *not* terminating its distribution agreement? That it was terminating the agreement, but *not* because of the

1 patent infringement case? What is false about Zest saying "Please note that due to pending
2 legal action we are terminating our distribution agreement with Attachments International and
3 Sybron Dental Specialities affiliated businesses effective May 4, 2011"? ID doesn't say.
4 The second statement with which ID takes issue appears in one of the advertisements
5 comparing the LOCATOR and GPS products side-by-side: "The GPS$^{TM}$ does come with a
6 limited 'one size fits all' Processing Kit. Note: it has just the 4.5lb. male. This will usually be
7 too much retention . . . ." Again, ID doesn't even try to explain what is false here. The final
8 statement appears in the same advertisement:

> Because the GPS$^{TM}$ cap does not pivot, the GPS$^{TM}$ requires a separate abutment/attachment to handle divergent implants. This angled abutment will add height to restoration and the 'knuckle's' protrusion could make the potential use of an existing denture impossible to consider.

12 What's false about that? ID doesn't say. It only says that the statement "dissuade[s]
13 clinicians from purchasing the GPS attachment," which of course isn't trade libel or product
14 disparagement in and of itself. (*See* Compl. ¶ 56.) ID also fails to allege special damages
15 in a non-conclusory way. *See Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, 802 F.Supp.2d
16 1078, 1090 (N.D. Cal. 2011) ("To properly allege damages [for trade libel], the pleader must
17 specifically identify the customers or transactions lost as a result of the disparagement; a
18 general decline in business will not suffice."); *Isuzu Motors Ltd. v. Consumers Union of U.S.,*
19 *Inc.,* 12 F.Supp.2d 1035, 1043–44, 1046–47 (C.D. Cal. 1998) (requiring that special be
20 specifically pled)

21       These claims are **DISMISSED**. It simply isn't enough for ID to excerpt statements
22 from Zest's advertisements and label them as false without any further explanation as to why
23 they're false.

**VII.   Leave to Amend**

25       Having dismissed all of ID's claims, the question remains whether to grant ID leave
26 to amend its complaint. Rule 15 of the Federal Rules of Civil Procedure mandates that leave
27 to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy

is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile." *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999).

ID's request for leave to amend is **GRANTED**, but with a few qualifiers. First, the amendment of ID's trademark infringement claim would be futile. Zest only incorporated ID's trademark into its advertisements to identify ID's product and distinguish it from Zest's product—and it recognized ID's trademark explicitly. Second, ID has to do a much better job of alleging what is false or misleading in Zest's advertisements, particularly its advertisement notifying customers that "[d]ue to pending legal action" it was terminating a distribution agreement with Implant Direct. Third, given that the advertisement mentioning the legal action said nothing about its particulars, ID may not base any claim on the alleged inconsistency in Zest suing it for patent infringement and simultaneously advertising that ID's product isn't as innovative as its own. Fourth, ID needs to be very clear about the nature of its Lanham Act claim, namely whether it's a § 1125(a)(1)(A) or § 1125(a)(1)(B) claim and what exactly is it a claim for. ID may have two weeks from the date this Order is entered to file its amended complaint.

**IT IS SO ORDERED**.

DATED: May 31, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge